**FIFTH DIVISION
MCFADDEN, P. J.,
BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 21, 2023**

# In the Court of Appeals of Georgia

A23A0204, A23A0205. MOORE v. HUMBLE; and vice versa.

MARKLE, Judge.

These related cases arise from Diana Humble's claims for breach of promise to marry and fraud in the inducement against Malcolm Sidney Moore, Jr. after she ended their engagement due to Moore's indiscretions. In Case No. A23A0204, Moore challenges the trial court's denial of his motions for partial summary judgment on these claims. In Case No. A23A0205, Humble challenges the trial court's denial of her motions to compel and to reopen discovery. For the reasons that follow, we reverse the trial court's denials of partial summary judgment in A23A0204, but affirm the trial court's judgment in A23A0205.

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Steward v. Arandia*, 360 Ga. App. 356, 357 (861 SE2d 206) (2021).

So viewed, the record shows that the parties began a romantic relationship in 2013, and Humble moved in with Moore the following year. Although the couple discussed the possibility of marriage, it is undisputed that Moore repeatedly informed Humble that he would not marry her without a prenuptial agreement. In 2016, Moore presented Humble with an engagement ring, of which they each contributed half the cost. The couple held themselves out as being engaged, although they did not set a wedding date. The prenuptial agreement was never executed as they were unable to agree to its terms. In late 2018, Humble broke off the engagement after finding text messages on Moore's phone to other women containing sexually explicit content and solicitations to engage in sexual acts.

Humble then sued Moore for breach of promise to marry, fraud, trover, and punitive damages.[1] During the course of litigation, Moore objected to many of Humble's discovery requests, including those for the production of multiple business and financial documents, and for the inspection of his electronic devices, as well as third-party requests to credit institutions, cell phone service providers, and hotels, among others. Moore filed a motion for a protective order and Humble then filed a motion to compel. The trial court granted Moore a protective order and denied Humble's motion to compel, limiting discovery.[2]

Moore filed motions for partial summary judgment on the claims for breach of promise and fraud, contending that it was Humble who had breached the promise to marry by breaking off the engagement; the marriage was conditioned on the prenuptial agreement, which was never executed; and, therefore, Humble could not justifiably rely on the promise to marry. Humble moved to reopen discovery under

---

[1] The trover claim alleges that Moore refused to allow Humble to remove her personal items from their former residence.

[2] The trial court granted Humble a certificate of immediate review as to the discovery order, but we denied the subsequent application for interlocutory review.

OCGA § 9-11-56 (f),[3] now arguing that the previously denied discovery was needed in light of Moore's repeated assertion of his right against self-incrimination at his deposition. Following a hearing, the trial court denied Humble's motion to reopen discovery, and also denied Moore's motions for partial summary judgment.

The trial court granted Moore a certificate of immediate review as to the denial of summary judgment, and we granted his application for interlocutory appeal. Humble then filed a cross-appeal, challenging the trial court's unfavorable rulings on her two discovery motions.[4] These appeals followed.

*Case No. A23A0204*

---

[3] That section provides:

Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavits facts essential to justify his opposition, the court may refuse the application for judgment, or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or may make such other order as is just.

[4] See *Ga. Dept. of Transp. v. Strickland*, 279 Ga. App. 753, 755 (3) (632 SE2d 416) (2006) (cross-appellant entitled to review of interlocutory orders as a matter of right without following interlocutory appeal procedures); OCGA § 5-6-38 (a).

4

1. Moore contends that the trial court erred by denying his motion for summary judgment as to the claim for breach of promise to marry because the prenuptial agreement was a condition precedent, and its absence renders the promise unenforceable. We agree.

"Breach of promise to marry is a common law contract action.[5] By the very nature of the action, there must be an actual promise to marry and acceptance of that promise before one can be held liable for a breach." (Citation and punctuation omitted.) *Finch v. Dasgupta*, 251 Ga. App. 637, 638 (2) (a) (555 SE2d 22) (2001); see also *Thorpe v. Collins*, 245 Ga. 77, 78 (1) (263 SE2d 115) (1980). It follows that general contract principles apply to this claim. See, e.g., *Kelley v. Cooper*, 325 Ga. App. 145, 146 (1) (751 SE2d 889) (2013) (applying rules of contract law to breach of promise to marry claim).

> [C]onditions precedent . . . are created by language such as "on condition that," "if," and "provided," or by explicit statements that certain events are to be construed as conditions precedent. In determining whether a contract contains a condition precedent, we look to the language of the agreement itself. If the language is plain and

---

[5] Although an action for breach of contract to marry sounds in contract, the measure of damages is determined under principles of tort law. *Brown v. Douglas*, 104 Ga. App. 769 (2) (122 SE2d 747) (1961).

unambiguous and the intent may be clearly gathered therefrom, we need look no further.[6]

(Citations and punctuation omitted.) *Hall v. Ross*, 273 Ga. App. 811, 813 (616 SE2d 145) (2005). Conditions precedent "must be performed before the contract becomes absolute and obligatory upon the other party." OCGA § 13-3-4. Although conditions precedent are generally not favored under Georgia law, "where the language of the contract clearly creates such a condition, that condition must be enforced." *Allen v. Sea Gardens Seafood*, 290 Ga. 715, 717 (2) (723 SE2d 669) (2012); *Hall*, 273 Ga. App. at 813; OCGA § 13-3-4.

Guided by these principles of contract construction, we conclude that Moore's promise to marry Humble is unenforceable due to the parties' failure to execute the prenuptial agreement. Importantly, it is undisputed that, at all times — both prior to their engagement and after— Moore informed Humble that he would not marry her unless a prenuptial agreement was executed. As such, his promise to marry contained a condition precedent. See *Hall*, 273 Ga. App. at 813. It is also undisputed that the parties failed to mutually assent to the terms of any prenuptial agreement, and one

---

[6] Oral contracts may contain conditions precedent. See, e.g., *Mooney v. Mooney*, 235 Ga. App. 117, 120 (2) (508 SE2d 766) (1998).

6

was never executed. Consequently, the failure to perform the condition precedent rendered the promise to marry unenforceable. See id.; OCGA § 13-3-4.

Accordingly, we reverse the trial court's denial of summary judgment to Moore on the breach of promise to marry claim.[7]

2. Moore next argues that the trial court's denial of his motion for summary judgment on Humble's claim for fraudulent inducement was error because there is no evidence of record to show that he did not intend to marry her, so long as the

---

[7] Our research reveals that it has been 19 years since our Supreme Court has taken up an appeal involving a claim for breach of promise to marry, and it has been 10 years since our last published opinion addressing such a claim. See *Folds v. Barber*, 278 Ga. 37 (597 SE2d 409) (2004); *Kelley*, 325 Ga. App. at 145. We question whether this cause of action has outlasted its intended objective. See 11 C.J.S. Breach of Marriage Promise § 1 ("Today, the concept of marriage is generally no longer perceived as an economic transaction; rather is regarded as a union of two persons borne out of love and affection, rather than a device by which property is exchanged."); see also *Gilbert v. Barkes*, 987 SW2d 772, 776 (II) (Ky. Supreme 1999) ("We believe the cause of action for breach of promise to marry has become an anachronism that has out-lived its usefulness and should be removed from the common law of the Commonwealth."); but see *Stanard v. Bolin*, 88 Wash.2d 614, 622 (565 P2d 94) (1977) (declining to wholly abolish breach of promise to marry action, but barring plaintiffs from recovering "for loss of expected financial and social position, because marriage is no longer considered to be a property transaction."). However, whether this claim should remain viable in Georgia is beyond the scope of our authority. *Georgia Lions Eye Bank v. Lavant*, 255 Ga. 60, 61 (2) (335 SE2d 127) (1985) ("A right of action existing at common law may be modified or abrogated by the legislature. . . . Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances.") (citation and punctuation omitted).

prenuptial agreement was in place. Because Humble cannot show that Moore did not intend to marry her at the time of the engagement, we agree.

Humble's fraud claim is based on her allegations that Moore only asked her to marry him because he desired her constant companionship and services, but never actually intended to marry her. We thus characterize this claim as one for fraudulent inducement. Generally, a fraud claim cannot be based on a promise to perform an act in the future; however, "an exception to this rule exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place." (Citation omitted.) *Kelley*, 325 Ga. App. at 148 (3). As we have explained,

> [t]o establish a claim for fraud in the inducement, or inceptive fraud to enter into a contract, a plaintiff must prove both that the defendant failed to perform a promised act and that the defendant had no intention of performing *when the promise was made*. Fraudulent intent *at the time of contracting* can be inferred based on subsequent conduct of the defendant that is unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith. Actionable fraud, however, does not result from a mere failure to perform promises made. Otherwise any breach of a contract would amount to fraud.

(Citations and punctuation omitted; emphasis supplied.) *Clary v. Allstate Fire & Cas. Ins. Co.*, 340 Ga. App. 351, 357-358 (4) (795 SE2d 757) (2017).

"The tort of fraud, including fraudulent inducement, has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Citation omitted.) *Najarian Capital v. Clark*, 357 Ga. App. 685, 688-689 (2) (849 SE2d 262) (2020). Generally, "fraud may be proved by slight circumstances, and whether a misrepresentation is fraudulent and intended to deceive is generally a jury question." (Citation and punctuation omitted.) *Kelley*, 325 Ga. App. at 148 (3). However, summary judgment is appropriate where the plaintiff fails to satisfy all of the elements of the claim. See, e.g., *Clary*, 340 Ga. App. at 358 (4); *BPP069, LLC v. Lindfield Holdings*, 346 Ga. App. 577, 585-586 (2) (816 SE2d 755) (2018) (in a case involving the sale of real property, summary judgment in favor of seller affirmed where buyer could not show justifiable reliance on seller's alleged misrepresentations regarding zoning status because "the contract expressly provided that the seller's obligation to convey good and marketable title was subject to zoning").

Here, Humble cannot show that Moore induced her to agree to marry him with a present intent to deceive her at the time of the engagement. See *Kelley*, 325 Ga.

9

App. at 148 (3); *Clary*, 340 Ga. App. at 357-358 (4). Importantly, the couple had discussed the prenuptial agreement prior to the engagement, and Humble was fully aware that Moore would not marry unless it was executed. Moreover, the evidence showed that the couple actively and repeatedly discussed the terms of the prenuptial agreement, but could not come to a meeting of the minds. Because the marriage was conditioned on the prenuptial agreement, which never came to fruition, Humble cannot show that she justifiably relied on the bare promise to marry.[8] See *Finch*, 251 Ga. App. at 638 (2) (b) (in action for fraud arising from alleged promised to marry, plaintiff must show she relied on partner's misrepresentations); *Najarian Capital*, 357 Ga. App. at 689 (2) (purchaser at foreclosure sale could not show justifiable reliance under terms of deed to absolve property of certain liens because purchaser "had actual notice of the various encumbrances and potential other liens against the [p]roperty at the time it executed the deed under power") (emphasis omitted); *BPP069, LLC*, 346 Ga. App. at 586 (2).

Accordingly, we reverse the trial court's denial of summary judgment to Moore on the fraud claim.

---

[8] Although we affirmed the trial court's judgment that a plaintiff could recover in fraud arising from a promise to marry in *Kelley*, that case did not involve a conditional promise to marry, as here.

10

3. In this appeal, Humble challenges the trial court's initial denial of her motion to compel discovery and grant of Moore's motion for protective order. Humble also challenges the trial court's denial of her motion to reopen discovery, contending that she would be entitled to further discovery under OCGA § 9-11-56 (f) if we were inclined to overrule the trial court's judgment as to the motions for partial summary judgment, as we have done supra. With regard to the first argument, it is moot in light of our conclusions above. *Hillcrest Foods v. Mikeals*, 359 Ga. App. 529, 531 (859 SE2d 510) (2021) ("When the act that is the subject of the requested relief is completed, then the matter is moot.") (citation and punctuation omitted). As to the second argument, we fail to discern how the additional discovery Humble seeks — probing Moore's alleged indiscretions and net worth — would alter our conclusions above, which are based largely on matters of law. See *Hernandez v. Schumacher Group Healthcare Consulting*, 352 Ga. App. 838, 846 (2) (835 SE2d 787) (2019), disapproved of on other grounds by *Bowen v. Savoy*, 308 Ga. 204, 209, n. 7 (839 SE2d 546) (2020) (party not entitled to additional discovery under OCGA § 9-11-56 (f) where it would not have added "substance" to her claim).

Accordingly, we affirm the trial court's judgment as to these discovery issues.

*Judgment affirmed in Case No. A23A0205. Judgment reversed in Case No. A23A0204. McFadden, P. J., and Brown, J., concur*.